Katherine G. Rubschlager (SBN 328100)
Email:  katherine.rubschlager@alston.com
**ALSTON & BIRD LLP**
1950 University Avenue, Suite 430
East Palo Alto, CA 94303
T:  650-838-2000
F:  650-838-2001

M. Scott Stevens (*pro hac vice* forthcoming)
Email:  scott.stevens@alston.com
**ALSTON & BIRD LLP**
101 South Tryon Street
Bank of America Plaza
Suite 4000
Charlotte, NC 28280
T:  704-444-1000
F:  704-444-1111

Deron R. Dacus (*pro hac vice* forthcoming)
**THE DACUS LAW FIRM, P.C.**
821 ESE Loop 323, Suite 430
Tyler, TX 75701
Telephone: (903) 705-1171
Facsimile: (903) 581-2543

*Counsel for Defendants Nokia Corp.,
Nokia Solutions and Networks Oy, and
Nokia of America Corp.*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| *IN RE SUBPOENA TO ZYXEL COMMUNICATIONS, INC.*<br><br>Served in case:<br>*TQ Delta, LLC v. Commscope Holding Company, Inc., Commscope Inc., Arris International Limited, Arris Global Ltd., Arris US Holdings, Inc., Arris Solutions, Inc., Arris Technology, Inc., and Arris Enterprises, LLC*, No. 2:21-cv-310-JRG (E.D. Tex.) (Lead Case),<br><br>*Nokia Corp., Nokia Solutions and Networks Oy, and Nokia of America Corp.*, No. 2:21-cv-309-JRG (E.D. | Misc. Case No. 2:22-mc-168<br><br>**NOKIA'S NOTICE OF MOTION AND MOTION TO COMPEL OUT-OF-DISTRICT SUBPOENAS AGAINST ZYXEL COMMUNICATIONS, INC.** |

Tex.) (Member Case).

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, as soon as counsel may be heard before the assigned Judge at the assigned time in the assigned department, Defendants Nokia Corp., Nokia Solutions and Networks Oy, and Nokia of America Corp. (collectively "Nokia") will and hereby do move to compel and enforce subpoenas served on non-party ZyXEL Communications, Inc. ("ZCI") on January 3, 2022. Pursuant to Rule 45(d) of the Federal Rules of Civil Procedure, Nokia brings this motion in this Court because the recipient of the subpoenas, ZCI, resides in this District and compliance is required here.

This motion is based on this Notice, the Memorandum of Points and Authorities, the Declaration of Katherine Rubschlager, all attached exhibits submitted concurrently herewith, all subsequent oral or other arguments, and any matters this Court may or must judicially notice.

Nokia is the defendant in an action currently pending in the U.S. District Court for the Eastern District of Texas, styled *TQ Delta, LLC v. Nokia Corp., Nokia Solutions and Networks Oy, and Nokia of America Corp.*, No. 2:21-cv-309-JRG (E.D. Tex. filed Aug. 13, 2021) (Member Case), where TQ Delta, LLC has alleged patent infringement against Nokia.

On January 3, 2022, Nokia served on ZCI a subpoena *duces tecum* and a subpoena *ad testificandum* seeking evidence for use in the Texas action. Pursuant to Local Rule 37-2, the requests relevant to this motion are attached to the Declaration of Katherine Rubschlager as Exhibit A.

Nokia's accompanying Memorandum of Points and Authorities details the basis for Nokia's contention that it is entitled to the requested discovery and how the proportionality and other requirements of Rule 26(b)(2) of the Federal Rules of Civil Procedure are satisfied.

Nokia respectfully asks this Court to grant Nokia's motion to compel, order ZCI to comply with the subpoena *duces tecum* and produce all documents responsive to

Document Request Nos. 1–11 within five business days of the Court's order, and order ZCI to comply with the subpoena *ad testificandum* and provide a witness to testify on Deposition Topics 1–12 within 10 business days of the Court's order.

Dated: August 19, 2022

BY: */s/ Katherine G. Rubschlager*

Katherine G. Rubschlager (SBN 328100)
Email: katherine.rubschlager@alston.com
**ALSTON & BIRD LLP**
1950 University Avenue, Suite 430
East Palo Alto, CA 94303
T: 650-838-2000
F: 650-838-2001

M. Scott Stevens (*pro hac vice* forthcoming)
Email: scott.stevens@alston.com
**ALSTON & BIRD LLP**
101 South Tryon Street
Bank of America Plaza
Suite 4000
Charlotte, NC 28280
T: 704-444-1000
F: 704-444-1111

Deron R. Dacus (*pro hac vice* forthcoming)
**THE DACUS LAW FIRM, P.C.**
821 ESE Loop 323, Suite 430
Tyler, TX 75701
Telephone: (903) 705-1171
Facsimile: (903) 581-2543

*Counsel for Defendants Nokia Corp., Nokia Solutions and Networks Oy, and Nokia of America Corp.*

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*3Com Corp v. D-Link Sys.*,
   No. 3:03-cv-02177-VRW, 2007 U.S. Dist. LEXIS 26540 (N.D. Cal.
   Mar. 27, 2007), Dkt. No. 391 .................................................................................6, 7

*In re Allergan, Inc. Sec. Litig.*,
   No. 14-cv-02004-DOC, 2016 U.S. Dist. LEXIS 195726 (C.D. Cal.
   Sept. 27, 2016) ...........................................................................................................5

*Carnegie Mellon Univ. v. Marvell Tech. Group, Ltd.*,
   807 F.3d 1283 (Fed. Cir. 2015) .................................................................................6

*Epistar Corp. v. Lowes Cos.*,
   No. CV-17-3219-JAK, 2018 U.S. Dist. LEXIS 228810 (C.D. Cal.
   Feb. 26, 2018) ............................................................................................................5

*Ericsson, Inc. v. D-Link Sys.*,
   773 F.3d 1201 (Fed. Cir. 2014) .................................................................................6

*Evs Codec Techs. v. Oneplus Tech. Shenzhen Co.*,
   No. 2:19-CV-00057-JRG, 2020 U.S. Dist. LEXIS 204027 (E.D. Tex.
   Apr. 9, 2020) ..............................................................................................................6

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*,
   318 F. Supp. 1116 (S.D.N.Y. 1970) ..........................................................................6

*Monster Energy Co. v. Vital Pharms., Inc.*,
   No. 5:18-cv-01882-JGB, 2021 U.S. Dist. LEXIS 67934 (C.D. Cal.
   Feb. 22, 2021) ............................................................................................................5

*Nguyen v. Lotus by Johnny Dung Inc.*,
   No. 8:17-cv-01317-JVS, 2019 U.S. Dist. LEXIS 122787 (C.D. Cal.
   June 5, 2019) ..............................................................................................................5

*Polaris Innovations, Ltd. v. Kingston Tech. Co.*,
   No. 8:16-cv-00300-CJC, 2017 U.S. Dist. LEXIS 222261 (C.D. Cal.
   Feb. 14, 2017), Dkt. No. 153 .....................................................................................5

*Superior Commc'ns v. Earhugger, Inc.*,
 257 F.R.D. 215 (C.D. Cal. 2009) ............................................................................ 5

*Truswal Sys. Corp. v. Hydro-Air Eng'g, Inc.*,
 813 F.2d 1207 (Fed. Cir. 1987) ............................................................................. 5

*WPIX Inc. v. Broad. Music, Inc.*,
 No. CV-11-4052-SJO2011, 2011 U.S. Dist. LEXIS 154908 (C.D. Cal.
 July 5, 2011) .......................................................................................................... 5

**Other Authorities**

Fed. R. Civ. P. 26(b) ....................................................................................... 5, 7

Fed. R. Civ. P. 45 ............................................................................................ 1, 5

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................1

II.  STATEMENT OF FACTS..................................................................................1

    A.   Background ................................................................................................1

III. ARGUMENT.......................................................................................................4

    A.   Legal Standards ..........................................................................................5

    B.   The Discovery Sought Is Relevant to the Texas Action .........................5

    C.   The Discovery Sought Is Limited in Scope, Not Budensome, and Readily Available to ZCI ............................................................................7

IV.  CONCLUSION ...................................................................................................8

## I. INTRODUCTION

Defendants Nokia Corp., Nokia Solutions and Networks Oy, and Nokia of America Corp. (collectively "Nokia") respectfully move this Court for an order compelling ZyXEL Communications, Inc. ("ZCI") to comply with a Rule 45 subpoena *duces tecum* and subpoena *ad testificandum* served on ZCI on January 3, 2022. The requested documents and deposition are directly relevant to the claims asserted against Nokia by TQ Delta, LLC ("TQ Delta") in the U.S. District Court for the Eastern District of Texas (*TQ Delta, LLC v. Nokia Corp., et al.*, No. 2:21-cv-309) (the "Texas Action"). Nokia has requested documents and deposition testimony indicating the U.S. and non-U.S. sales of all ZCI products licensed under an agreement between ZCI and TQ Delta—namely, ZCI's DSL CPE products and DSL Port Equipment (as defined in the subpoenas). Although the information appears to be readily available to ZCI, ZCI has refused to provide *any* documents or deposition testimony pursuant to the subpoenas. The U.S. and non-U.S. sales information, and deposition testimony regarding that information, are necessary so that Nokia can perform a complete and accurate reasonable-royalty analysis for those licensed products. This information is highly relevant to the Texas Action, and it is unquestionably within ZCI's possession, custody, or control. Nokia therefore respectfully requests that the Court grant the motion to compel and order ZCI to comply with the subpoenas.

## II. STATEMENT OF FACTS

### A. Background

On August 13, 2021, TQ Delta sued Nokia in the Eastern District of Texas alleging that Nokia infringes 19 patents[1] by making, using, selling, offering for sale, and/or importing customer premise equipment ("CPE") and central office equipment ("CO") products for use with digital subscriber line ("DSL") technology ("the DSL Products"). (*See* Dkt. No. 1, Original Complaint ¶¶ 2, 24, 29-30.)

---

[1] Specifically, U.S. Patent Nos. 7,570,686; 7,844,882; 8,090,008; 8,468,411; 8,495,473; 8,594,162; 8,595,577; 8,937,988; 9,014,193; 9,094,348; 9,154,354; 9,300,601; 9,485,055; 9,547,608; 9,894,014; 10,044,473; 10,409,510; 10,567,112; and 10,833,809 (collectively, the "Asserted Patents").

ZCI is well aware of TQ Delta and the Asserted Patents. Indeed, ZCI was a party to a previous litigation—styled *TQ Delta, LLC v. ZyXEL Communications, Inc.*, No. 13-cv-02013-RGA (D. Del. filed Dec. 9, 2013) ("the Delaware Action")—that involved TQ Delta and many of the same patents at issue in the Texas Action. TQ Delta and ZCI ultimately settled the Delaware Action through a Settlement and Patent License Agreement, and the parties dismissed their respective claims. In connection with the resolution of that case, TQ Delta licensed its patents (including the Asserted Patents) to ZCI in December 2019.

TQ Delta identified ZCI to Nokia during discovery in the Texas Action. Specifically, on December 9, 2021, Nokia served discovery requests on TQ Delta seeking documents and deposition testimony identifying each entity authorized or licensed to practice any of the claims of the Asserted Patents, or to make, use, sell, offer to sell, or import into the United States a product that practices, or is alleged by TQ Delta to practice, any claim of the Asserted Patents. (Exhibit B.) In response, TQ Delta produced a Patent Settlement and License Agreement, dated December 27, 2019, between TQ Delta and ZCI (through its parent company, ZyXEL Communications Corp.). (Exhibit C.) In that agreement, TQ Delta granted ZCI "an irrevocable worldwide, non-exclusive, non-assignable, non-sublicensable license" to the "Licensed Patents." (*Id.*). The "Licensed Patents" include "any patents and patent applications owned by [TQ Delta] or for which it has the right to grant licenses as of the Effective Date, including all of those identified in Exhibit E [to the agreement]; and . . . any and all patents and patent applications, worldwide, that are owned by TQ Delta or for which it has the right to grant licenses." (*Id.* at 3). Accordingly, the Licensed Patents include the Asserted Patents involved in the Texas Action.

The agreement also included several exhibits that are particularly relevant to this motion. For instance, Exhibit A to the agreement details the actual and estimated quantities of "Non-Lantiq DSL CPE and DSL Port Equipment sold by [ZCI] from 2014–2019," and estimates the quantities to be sold "from 2020 through the end of the

1  License term." (*Id.* at 6). Exhibit B to the agreement details the sum of "the quantities
2  of Non-Lantiq DSL CPE and DSL Port Equipment actually sold in the United States .
3  . . from January 1, 2014, through September 31, 2019," and "Licensee's reasonable
4  estimate of the quantities . . . to be sold in the United States . . . from October 1, 2019,
5  through December 31, 2019." (*Id.* at 9). Exhibit B also includes "Licensee's reasonable
6  estimate of the quantities of Non-Lantiq DSL CPE and DSL Port Equipment sold and
7  to be sold [outside the U.S.] from January 1, 2014, though December 31, 2019." (*Id.*).
8  Exhibit C to the agreement details "Licensee's reasonable estimate of the quantities of
9  Non-Lantiq DSL CPE and DSL Port Equipment to be sold in the Patent Territories . . .
10 from January 2, 2020, through the end of the License Term." (*Id.* at 9–10).

Because ZCI has this information, Nokia issued a subpoena *duces tecum* and subpoena *ad testificandum* to ZCI on January 3, 2022. (Exhibit A). The subpoena *duces tecum* includes eleven document requests, and the subpoena *ad testificandum* includes twelve deposition topics, all of which are directed to the purchasing and licensing of the Asserted Patents between ZCI and TQ Delta and the corresponding sales information from ZCI. As an example, the requests sought ZCI's U.S. and non-U.S. sales information from December 9, 2007 to the present for DSL Products and any ZCI "Licensed Product" under the Settlement and Patent Licensing Agreement:

**Document Request No. 7:**
The U.S. and non-U.S. sales (in units, ports, and revenue) of any ZyXEL "Licensed Product" under the Settlement and Patent License Agreement between TQ Delta and ZyXEL.

**Document Request No. 8:**
The U.S. and non-U.S. sales (in units, ports, and revenue) of any ZyXEL "DSL CPE" and "DSL Port Equipment" product from December 9, 2007 to the present.

- 3 -

To date, ZCI has failed to provide any documents, or to agree to provide any testimony, regarding sales of ZCI products licensed under the agreement with TQ Delta. Instead, ZCI has responded with boilerplate objections, and ZCI has attempted to justify its lack of a substantive response by asserting that "ZCI is not a signatory to a Settlement and Patent License Agreement with TQ Delta, LLC." (Exhibit D at 11).

On January 19, 2022, Nokia raised its concerns regarding ZCI's failure to provide a sufficient response to the subpoenas and requested ZCI's availability to meet and confer. Nokia stated that it may need to proceed with filing a motion to compel if ZCI refused to respond. ZCI replied by rehashing its same objections and raising a conflict-of-interest argument in light of Alston & Bird's former representation of ZCI in the Delaware matter.2

Nokia's local counsel thereafter met and conferred with counsel for ZCI to reiterate Nokia's requests for ZCI's sales information. (Rubschlager Decl., ¶ 6). After that meeting, Nokia's local counsel attempted to contact ZCI on numerous occasions in an attempt to reach an agreement. (*Id.*) ZCI ignored all of those requests. (*Id.*) ZCI thus apparently maintains its refusal to produce any documents or deposition testimony responsive to the subpoenas, despite having the requested sales information readily available.

### III. ARGUMENT

ZCI's failure to provide responsive documents and testimony pursuant to the duly issued subpoenas is unreasonable and unsupported in the law, particularly since the requested discovery is narrowly tailored and not overly burdensome.

#### A. Legal Standards

Rule 26(b) provides that a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional

---

[2] Alston & Bird disagrees that any conflict exists based on its prior representation of ZCI. Alston & Bird no longer represents ZCI in any capacity.

to the needs of the case." Fed. R. Civ. P. 26(b)(1). "The scope of discovery that can be obtained by a subpoena under Rule 45 is the same as the scope under Rule 26(b)." *E.g.*, *Epistar Corp. v. Lowes Cos.*, No. CV-17-3219-JAK, 2018 U.S. Dist. LEXIS 228810, at *5 (C.D. Cal. Feb. 26, 2018). Relevant information need not be admissible to be discoverable, Fed. R. Civ. P. 26(b)(1), and courts generally recognize that relevancy for purposes of discovery is broader than relevancy for purposes of trial. *See Monster Energy Co. v. Vital Pharms., Inc.*, No. 5:18-cv-01882-JGB, 2021 U.S. Dist. LEXIS 67934, at *7 (C.D. Cal. Feb. 22, 2021) (citing *Nguyen v. Lotus by Johnny Dung Inc.*, No. 8:17-cv-01317-JVS, 2019 U.S. Dist. LEXIS 122787, at *3 (C.D. Cal. June 5, 2019)). The party moving to compel discovery bears the burden of establishing that the information sought is relevant under Rule 26(b)(1). *In re Allergan, Inc. Sec. Litig.*, No. 14-cv-02004-DOC, 2016 U.S. Dist. LEXIS 195726, at *9-10 (C.D. Cal. Sept. 27, 2016). "But, ultimately, '[t]he party who resists discovery has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections.'" *Id.* at *10 (quoting *Superior Commc'ns v. Earhugger, Inc.*, 257 F.R.D. 215, 217 (C.D. Cal. 2009)).

In the context of a third-party subpoena, a district court that has no connection to the underlying case "should be 'especially hesitant to pass judgment on what constitutes relevant evidence thereunder.' Where relevance is in doubt . . . the court should be permissive." *WPIX Inc. v. Broad. Music, Inc.*, No. CV-11-4052-SJO2011, 2011 U.S. Dist. LEXIS 154908, at *5 (C.D. Cal. July 5, 2011) (quoting *Truswal Sys. Corp. v. Hydro-Air Eng'g, Inc.*, 813 F.2d 1207, 1212 (Fed. Cir. 1987)).

**B.  The Discovery Sought Is Relevant to the Texas Action.**

Nokia's request for U.S. and non-U.S. sales information of ZCI's DSL Products by SKU is unquestionably relevant to the Texas Action. *See Polaris Innovations, Ltd. v. Kingston Tech. Co.*, No. 8:16-cv-00300-CJC, 2017 U.S. Dist. LEXIS 222261, at *13 (C.D. Cal. Feb. 14, 2017), Dkt. No. 153 (granting motion to compel and stating that, "as a general matter, worldwide sales information is relevant to . . . reasonable royalty

calculations"); *Carnegie Mellon Univ. v. Marvell Tech. Group, Ltd.*, 807 F.3d 1283, 1304 (Fed. Cir. 2015) (stating that in a reasonable royalty analysis, "[p]ast licensing practices of the parties and licenses for similar technology in the industry may be useful evidence"); *Ericsson, Inc. v. D-Link Sys.*, 773 F.3d 1201, 1227 (Fed. Cir. 2014) (finding that "royalties received by the patentee for the licensing of the patent in suit" is a relevant factor) (citing *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970)).

TQ Delta and ZCI (a subsidiary of ZyXEL Communications Corp.) have a worldwide license agreement covering the Asserted Patents. Further, ZCI sold the products licensed under that agreement both in the United States and internationally. Accordingly, for Nokia to determine the reasonable royalty rate for the products covered by that license agreement, Nokia needs discovery of ZCI's U.S. and non-U.S. product sales. Moreover, to properly determine which covered products were sold, and the number of covered products that were sold, Nokia additionally needs the total units sold by SKU. Without the complete sales information, Nokia cannot possibly perform an accurate reasonable royalty analysis. *See Evs Codec Techs. v. Oneplus Tech. Shenzhen Co.*, No. 2:19-CV-00057-JRG, 2020 U.S. Dist. LEXIS 204027, at *5 (E.D. Tex. Apr. 9, 2020) (citing *3Com Corp v. D-Link Sys.*, No. 3:03-cv-02177-VRW, 2007 U.S. Dist. LEXIS 26540, at *9 (N.D. Cal. Mar. 27, 2007), Dkt. No. 391 (granting motion to compel worldwide sales information because "worldwide sales information is relevant to . . . reasonable royalty calculations" and "could be indicative of a 'ceiling amount for a reasonable royalty'"). There is thus no question that ZCI's sales information of the same DSL products covered under the Settlement and Patent License Agreement between TQ Delta and ZCI are highly relevant to Nokia's reasonable royalty analysis in the Texas Action.

### C. The Discovery Sought Is Limited in Scope, Not Burdensome, and Readily Available to ZCI.

The sales information sought by Nokia's subpoenas is narrowly tailored. The Federal Rules expressly permit discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). As shown above, there is no question that ZCI's sales information for its DSL Products is highly relevant to Nokia's reasonable royalty analysis for the Asserted Patents. ZCI's assertion that the requests are not "narrowly or otherwise properly tailored to lead to the discovery of admissible evidence" misses the mark. First, "[i]nformation within th[e] scope of discovery [afforded by Rule 26(b)(1)] need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b). Second, it is highly likely that the requested discovery will constitute or at least lead to the discovery of admissible evidence, as the worldwide sales will help determine the reasonable royalty rate for a comparable license. *See, e.g.*, *3Com Corp v. D-Link Sys.*, No. 3:03-cv-02177-VRW, 2007 U.S. Dist. LEXIS 26540, at *9 (N.D. Cal. Mar. 27, 2007) (ordering production of worldwide sales where "worldwide sales [we]re reasonably calculated to lead to the discovery of admissible evidence" and were related to a party's reasonable royalty calculation).

ZCI also cannot hide behind its parent corporation (ZyXEL Communications Corporation) on the basis that "ZCI is not a signatory to a Settlement and Patent License Agreement with TQ Delta, LLC." (Exhibit D at 11). ZCI itself was a party to the Delaware Action that resulted in execution of the Settlement and Patent License Agreement with TQ Delta. Indeed, the Settlement and Patent License Agreement was predicated on TQ Delta dismissing the case against ZCI, and the agreement expressly identified ZCI as a "Party" to the agreement. For example, the Agreement states that "IT IS HEREBY STIPULATED by Plaintiff TQ Delta, LLC and Defendants ZyXEL Communications, Inc. and ZyXEL Communications Corporation (together, the

"Parties"), . . . and further to an executed settlement and patent license agreement *between the Parties*," that all claims would be dismissed. (Exhibit C at 14 (emphasis added)). ZCI was thus a party to the agreement and can reasonably provide sales data relevant to that agreement.

Additionally, it is not unduly burdensome for ZCI to provide worldwide sales information, and ZCI cannot credibly claim to be burdened by doing so. There is no dispute that ZCI maintains sales data for its DSL Products. ZCI has not shown (and cannot reasonably show) that the requested information would be unduly burdensome or costly to produce in response to the subpoenas, or that the information is equally available from other sources. Rather, the sales information sought is readily obtainable from ZCI, and ZCI is the party that can provide it. Indeed, ZCI clearly has the means to provide the requested sales information since it has *already produced* particular U.S. and non-U.S. sales information in connection with Exhibits A, B, and C to the agreement. Further, as ZCI was a party to the litigation involving TQ Delta, and was a "Party" to the agreement, ZCI is in the best position to provide the requested documents related to that litigation. Moreover, for certain of the requested discovery, such as information related to any marking of any ZCI article, ZCI is likely the *only* party that has the knowledge and documents responsive to those requests.

As shown, the requested discovery is highly pertinent to issues asserted against Nokia in the Texas Action, and ZCI would bear minimal, if any, burden by producing worldwide sales information by SKU and other responsive documents already within its possession, custody, or control, and providing a deposition regarding those topics.[3]

## IV. CONCLUSION

There is no dispute that ZCI has information that is directly relevant to Nokia's reasonable royalty analysis in the Texas Action. The information is readily available to

---

[3] Any concern that ZCI may have regarding confidentiality is quelled by the Protective Order issued in the Texas Action. *See TQ Delta, LLC v. Commscope Holding Company, Inc.*, No. 2:21-cv-310-JRG (E.D. Tex.) (Lead Case), Dkt. No. 61 ("Protective Order"). The information can be provided pursuant to the Protective Order.

ZCI, and ZCI has no basis for its refusal to produce this discoverable information in response to the duly issued subpoenas. Nokia respectfully requests that this Court grant its motion and compel ZCI to comply with the subpoenas.

Dated: August 19, 2022

BY: */s/ Katherine G. Rubschlager*

Katherine G. Rubschlager (SBN 328100)
Email: katherine.rubschlager@alston.com
**ALSTON & BIRD LLP**
1950 University Avenue, Suite 430
East Palo Alto, CA 94303
T: 650-838-2000
F: 650-838-2001

M. Scott Stevens (*pro hac vice* forthcoming)
Email: scott.stevens@alston.com
**ALSTON & BIRD LLP**
101 South Tryon Street
Bank of America Plaza
Suite 4000
Charlotte, NC 28280
T: 704-444-1000
F: 704-444-1111

Deron R. Dacus (*pro hac vice* forthcoming)
**THE DACUS LAW FIRM, P.C.**
821 ESE Loop 323, Suite 430
Tyler, TX 75701
Telephone: (903) 705-1171
Facsimile: (903) 581-2543

*Counsel for Defendants Nokia Corp., Nokia Solutions and Networks Oy, and Nokia of America Corp.*